**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 22-cv-03043-RM

EVA DALEY,

Petitioner,

v.

JOHNNY CHOATE, in his official capacity as Warden of the Aurora Contract Detention Facility owned and operated by GEO Group, Inc.,
JASON KNIGHT, in his official capacity as Acting Field Office Director, Denver, U.S. Immigration & Customs Enforcement,
ALEJANDRO MAYORKAS, in his official capacity as Secretary, U.S. Department of Homeland Security,
TAE D. JOHNSON, in his official capacity as Acting Director of Immigration & Customs Enforcement, and
MERRICK GARLAND, in his official capacity as Attorney General, U.S. Department of Justice,

Respondents.

---

**ORDER**

---

Before the Court is Petitioner's Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. (ECF No. 1.) In her Petition, she asks this Court to (1) assume jurisdiction over this matter; (2) enjoin Respondents from transferring Petitioner out of this jurisdiction pending the resolution of this case; (3) issue a writ of habeas corpus to release Petitioner on her own recognizance or, in the alternative, order that Respondents provide her with an individualized bond hearing, before a neutral adjudicator, within seven days of this Order at which (a) Respondents bear the burden of establishing, by clear and convincing evidence, that her continued detention is justified, (b) the adjudicator must meaningfully consider alternatives to detention, (c) the adjudicator may not give undue weight to allegations underlying dismissed

criminal charges, (d) the adjudicator may not place undue weight on unauthenticated or antiquated documents regarding alleged criminal legal contacts, and (e) the adjudicator must take into consideration Petitioner's mental health diagnoses and trauma when considering criminal legal contacts; (4) award Petitioner's attorney's fees and costs under the Equal Access to Justice Act; and (5) grant any further relief that the Court deems proper. Petitioner also filed a Motion for a Temporary Restraining Order simultaneously with her Petition for Habeas Corpus. (ECF No. 3.) The Court previously issued an Order denying the Motion for Temporary Restraining Order and ordering Respondents to show cause why Petitioner's habeas petition should not be granted. (ECF No. 9.) Respondents filed a Response (ECF No. 16) and Petitioner filed a Reply (ECF No. 17) and the matter is now ripe for decision. The Court finds and orders as follows.

## I. BACKGROUND

Petitioner was born in Guatemala, where she was left in the custody of her brothers at the age of ten. (ECF No. 1, p.10.) Her parents migrated to the United States and Petitioner followed, alone, when she was 12 years old. (Id.) Before she immigrated to the United States, Petitioner experienced numerous sexual assaults and violence, and that pattern continued when she arrived in this country. (Id.) Petitioner reports experiencing two different incidents of human trafficking once she was in the United States, as well as other sexual assaults and domestic violence. (Id., pp.10-11.) As a result of these numerous traumas, Petitioner has suffered, and continues to suffer from, a number of mental illnesses, including Post-Traumatic Stress Disorder ("PTSD") and Depressive Disorder. (Id., p.10.)

In 2007 Petitioner was involved in an incident that ultimately led to her conviction for second degree murder. (Id., p.11.) Although her conviction was ultimately vacated and replaced with a conviction for assault with a deadly weapon, not a firearm, she served approximately

fourteen and a half years in the California Penal System. (Id., ECF No. 3, p. 4.) Upon being granted parole in California, Petitioner was detained by Immigration and Customs Enforcement ("ICE") on November 1, 2021, prior to her release from prison, and placed in the Aurora Contract Detention Facility (the "Aurora facility") in Colorado. (ECF 1, p.12.) The Department of Homeland Security ("DHS") charged her as being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). (Id.) Since her detention by ICE, Petitioner has filed repeated requests for discretionary release from custody, each of which DHS has denied. (Id., p.17.) Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c), due to her criminal conviction. (Id., p.13.) DHS's custody determinations reference Petitioner's conviction and note that she is "considered a danger to the community." (ECF No. 1-1, pp. 5-6.)

Also during the course of her detention, Petitioner has started the processes to pursue several different forms of immigration relief. She filed a pro se application for asylum, withholding of removal, and protection under the Convention Against Torture. (ECF No. 1, p.13.) She has also filed an application for T nonimmigrant status, based on her status as a survivor of human trafficking. (Id., pp.14-15.) Her pro bono counsel has also started to pursue U nonimmigrant status for Petitioner, arguing that she meets the requirements as a survivor of a qualifying crime. (Id., pp.16-17.) She also filed a request for prosecutorial discretion, seeking the dismissal of her removal proceedings, but ICE declined that request. (Id., p.17.) ICE did note, however, that it would review any supplemental information Petitioner might file in support of the request. (Id.)

Both the applications for T nonimmigrant status and U nonimmigrant status are processed through United States Citizenship and Immigration Services ("USCIS") which is separate and outside the jurisdiction of the immigration court. (Id., p.15.) As a result of that separate process,

Petitioner asserts, her detention in the ICE facility potentially will extend for years. (Id., pp.15-16.) She asks this Court to issue a writ of habeas corpus, directing Respondents to release Petitioner on her own recognizance or, in the alternative, provide her with a constitutionally adequate, individualized bond hearing before a neutral adjudicator within seven days of this Order. (Id., p.34.)

## II. LEGAL STANDARDS

A number of Orders in this jurisdiction have set out a clear framework for analyzing the precise question before the Court. *See, e.g. Viruel Arias v. Choate*, No. 22-cv-2238-CNS, 2022 WL 4467245 at *2, (D. Colo. Sept. 26, 2022); *Sheikh v. Choate*, No. 22-cv-1627-RMR, 2022 WL 17075894 at *2, (D. Colo. July 27, 2022); *Singh v. Garland*, No. 21-cv-0715-CMA, 2021 WL 2290712 t *2-3 (D. Colo. June 4, 2021); *Singh v. Choate*, No. 19-cv-0909-KLM, 2019 WL 3943960 at *3-4 (D. Colo. Aug. 21, 2019). As those Orders explain, 8 U.S.C. § 1226 provides for the "Apprehension and detention of aliens" pending a determination on whether such individual will be removed from the United States. In this case, § 1226(c), which addresses "Detention of criminal aliens" governs the Petitioner's case. That subsection *requires* that the Attorney General detain any individual who is, among other things, "deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." 8 U.S.C. § 1227(a)(2)(A)(iii), the provision applicable in this case, lists as deportable "[a]ny alien who is convicted of an aggravated felony at any time after admission." Petitioner does not appear to dispute that her conviction for assault with a deadly weapon qualifies as an aggravated felony under this provision and concedes that she is subject to mandatory detention pursuant to § 1226(c). (ECF No. 1, p.13.) On this point the Respondents agree. (ECF No. 16, pp.6-7.)

The Court's inquiry, however, does not end there. Although the Supreme Court has concluded that "[d]etention during removal proceedings is a constitutionally permissible part of [the deportation] process," *Demore v. Kim*, 538 U.S. 510, 517, 531 (2003), it is also clear that the Fifth Amendment does entitle non-citizens to due process of law during those deportation proceedings, *id.* at 523. While there is no statutory right to periodic bond hearings under § 1226(c), *see Jennings v. Rodriguez*, 138 S. Ct. 830, 851 (2018), "[m]andatory detention is not indefinite detention," *Viruel Arias*, 2022 WL 4467245 at * 2. Thus, several Orders from this District have concluded that "[a] non-citizen's unreasonably long or unjustified detention under §1226(c) may be unconstitutional." *Id.*

In *Demore*, the Supreme Court declined to indicate at what point a period of mandatory detention is so prolonged that detainees are entitled to an individualized determination as to their risk of flight and dangerousness. The Supreme Court focused, however, on the short duration of any detention expected in the context of § 1226(c). *Demore*, 538 U.S. at 528-29. The Court noted that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average of 47 days and a median of 30 days." *Id.* at 529. "In the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." *Id.* The current time frame for removal proceedings, however, appears to be quite different. In Petitioner's case, for example, she has been in detention for over 430 days. Thus, numerous courts have concluded that, at some point, a detention can become so prolonged as to become unreasonable or unjustified, at which time a petitioner will be entitled to an individualized bond hearing. *See, e.g. Viruel Arias*, 2022 WL 4467245 at *2; *Sheikh*, 2022

WL 17075894 at *3; *Villaescusa-Rios v. Choate*, No. 20-cv-03187-CMA, 2021 WL 269766 at *3 (D. Colo. Jan. 27, 2021).

In the absence of a bright-line rule, federal courts in this District and elsewhere have applied a balancing test to evaluate whether mandatory detention without a hearing has become unconstitutionally prolonged based on the following factors:

> (1) the total length of detention to date;
> (2) the likely duration of future detention;
> (3) the conditions of detention;
> (4) delays in the removal proceedings caused by the detainee;
> (5) delays in the removal proceedings caused by the government; and
> (6) the likelihood that the removal proceedings will result in a final order of removal.

*Villaescusa-Rios* 2021 WL 269766 at *3. "Where they have been detained under § 1226(c) for an unconstitutional length of time, a non-citizen is entitled to an individualized bond hearing." *Viruel Arias*, 2022 WL 4467245 at *2.

At any such individualized bond hearing, the majority of the Courts in this District have allocated the burden of proof to the government, to "show by clear and convincing evidence" that the non-citizen poses a flight risk or is a danger to the community. *Id.* at *4; *Sheikh*, 2022 WL 17075894 at *5; *Villaescusa-Rios* 2021 WL 269766 at *5; *Singh*, 2019 WL 3943960 at *7; *but see Basri v. Barr*, 469 F.Supp.3d 1063, 1074 (D. Colo. 2020) (concluding that a non-citizen, subject to removal, is not entitled to have the burden of proof allocated to the government to prove that detention is necessary).

## III. ANALYSIS

The Court will review the six factors used in this District to determine whether Petitioner's detention has become unconstitutionally prolonged.

**A. Total length of detention to date**

As noted above, Petitioner has now been detained for more than 430 days, or over fourteen months. Courts in the District of Colorado have concluded that such a period of time is unreasonable and weighs in favor of granting a petitioner a bond hearing. *See, e.g.*, *Sheikh*, 2022 WL 17075894 at *3 (concluding that a detention of 393 days weighed "strongly in Petitioner's favor"); *Viruel Arias*, 2022 WL 4467245 at *2 (concluding that a detention for over fourteen months weighed in favor of the petitioner); *Singh*, 2019 WL 3943960 at *5 (concluding that a detention of over twenty months weighed in favor of the petitioner). Other jurisdictions, moreover, have concluded that the same, or even shorter periods of time merit an individualized hearing. *See, e.g. Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497, at *5 (S.D.N.Y. Aug. 20, 2018) (concluding that a detention of nine months weighed in favor of finding the continued detention to be unreasonable); *Muse v. Sessions*, 409 F. Supp. 3d 707, 716 (D. Minn. 2018) (concluding that a detention of over fourteen months "strongly favors granting relief"); *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018) (concluding that a detention of over eight months had become unreasonable and unconstitutional). The Court agrees that such a period is of sufficient duration that the first factor weighs in favor of Petitioner.

**B. Likely duration of future detention**

In addressing this factor, Respondents assert that "the likely duration of Petitioner's future detention depends on the pending applications with USCIS, for which Petitioner and her counsel have not sought expedited review with ICE." (ECF No. 16, p.11.) In the Court's view, this argument is more appropriately directed to the fourth factor, regarding delays caused by Petitioner. Respondents also assert that, because petitioner is removable to Guatemala, and

"removals to Guatemala are common, once Petitioner's removal proceedings are complete, . . . absent additional, unforeseen delays, ICE estimates that it will be able to remove Petitioner to Guatemala within two weeks of the date that the order of removal becomes administratively final." (ECF No. 16, p.7.) While the Court accepts Respondents' representation that, should the order of removal become final, removal would be effectuated quickly, that fact alone does not satisfy the Court regarding the *total* potential length of Petitioner's detention.

Petitioner points out her currently pending application for T nonimmigrant status, which she filed with USCIS. (ECF No. 1, p.15.) She notes that even with an expedited review of her petition, based on counsel's experience it takes about 200 days for USCIS to issue either a decision or a Request for Evidence in response to such an application. (Id.) Respondents do not dispute that statistic. Petitioner also asserts that, if her application for T nonimmigrant status were to be denied, she would seek appellate review of that decision. (Id.) If her application were granted, she states, the removal proceedings would be terminated, but the government would have the option to appeal that termination. (Id., p.16.)

Petitioner also notes that she has filed applications for asylum, withholding of removal, and protection under the Convention Against Torture. (Id. p.13.) She is also pursuing U nonimmigrant status as well as requesting the exercise of prosecutorial discretion in her case. (Id. pp.16-17.) In light of all of these proceedings the Court concludes that Petitioner's detention could continue for many months or even years. Thus, this factor weighs in favor of Petitioner's position as well.

**C. Conditions of detention**

Respondents point out that the Court, in its Order denying Petitioner's Motion for a Temporary Restraining Order, stated that, had it adopted Petitioner's arguments about the

deficiencies in the Aurora facility, the Court would be required to grant release from detention for every person who applies. (ECF No. 9, p.5.) The Court has not changed its view on this point and does not believe that those conditions, alone, justify an immediate release from custody. Those conditions, however, do factor into the analysis of whether Petitioner is entitled to an individualized bond hearing. Petitioner notes the numerous ways that detention in the Aurora facility is more akin to incarceration than a civil confinement. (ECF No. 1, pp.29-31.) She notes that the Aurora facility has a history of violating medical standards, resulting in the deaths of some detainees, as well as of violating ICE's own detention standards. (Id., pp.30-31.) Individuals detained in the Aurora facility are also denied outside recreation, are required to wear government issued clothing, are deprived of contact visitation with their loved ones, and are subject to "[d]aily outbursts of violence and threats." (Id., pp. 29-31; ECF No. 3, pp.9-10.) Again, Respondents do not dispute that these are the conditions under which Petitioner is detained. The Court concludes, therefore, that this factor also weighs in favor of Petitioner.

**D. Cause of delays in removal proceedings**

Respondents suggest that Petitioner has caused the delay in her own removal proceedings by making thirteen requests for continuances. (ECF No. 16, p.11.) Respondents also point out that Petitioner has pending several applications before USCIS. (Id.) Respondents do not suggest, however, that Petitioner has made such requests or filed such petitions and applications, for the purpose of causing delay.

Petitioner asserts that Respondents themselves are responsible for the delays in her proceedings. (ECF No. 1, p.32.) She points to some delays in docketing her case and argues that USCIS has not yet provided her with a receipt notice for her application for T nonimmigrant status which, she argues, she requires in order to request expedited processing. (Id.) Like

Respondents, however, she does not argue that they have caused such delays for any improper reason.

As stated in the prior Order, the Court does not believe that, by seeking numerous forms of relief from removal, Petitioner is attempting to delay her removal proceeding. (ECF No. 9, p.5.) Petitioner's requests for continuances, moreover, do not appear to have been a dilatory tactic. The Court likewise does not believe that Respondents are deliberately extending the length of Petitioner's detention. And both parties have been the source of some of the delays in this case. The Court therefore concludes that these factors are neutral.

**E. Likelihood of a final order of removal**

This factor is, in the Court's view, the most difficult to assess. The parties have not provided it with evidence of the relative merits of Petitioner's numerous pathways for immigration relief. (ECF No. 1, p.32.) As previously noted, Petitioner claims to have four pathways currently in motion: (1) she is seeking relief from removal due to her fear of returning to Guatemala; (2) she believes that she has a bona fide claim for T nonimmigrant status based on her history of being trafficked; (3) she is seeking certification to apply for U nonimmigrant status, which is available to survivors of certain qualifying crimes who also cooperate with law enforcement in its investigation; and (4) she intends to renew her request for prosecutorial discretion upon the receipt of supplemental evidence. (Id.)

Respondents do not opine on the merits of any of these claims and, instead, state simply that Petitioner is "inadmissible" due to her conviction for assault with a deadly weapon. (ECF No. 16, p.12.)

Because the Court lacks the evidence to permit it to assess the merits of Petitioner's various claims that could prevent a final order of removal in her case, the Court concludes that this factor, also, is neutral.

## IV. CONCLUSION

The Court has concluded that three of the factors weigh in favor of Petitioner and that the remaining three factors are neutral. Thus, the Court concludes that on balance, the factors weigh in favor of Petitioner and demonstrate that her detention has become unreasonable.

Respondents nevertheless assert that Petitioner is not entitled to an individualized bond hearing because she has already received a hearing on her mandatory detention. Although Respondents are correct that Petitioner requested, and received, a ruling on whether she is subject to mandatory detention, as the Court has explained, that alone does not resolve the question. Even a non-citizen who is subject to mandatory detention will have the right to an individualized bond hearing once that detention exceeds constitutional bounds. Thus, the Court rejects Respondents' assertion that Petitioner has already had an individualized review of her custody. (ECF No. 16, p.11.) The Court concludes, therefore, that Petitioner is entitled to an individualized bond hearing before a neutral adjudicator.

The Court also agrees that, by requiring the government to bear the burden of proving, by clear and convincing evidence, that Petitioner should not be released either because she poses a flight risk or because she is dangerous to the community, the proceeding will adequately protect Petitioner's due process right.

Based on the foregoing analysis and all the files, records, and proceedings herein, and in accordance with the foregoing, it is ORDERED:

1. That Petitioner's Motion (ECF 1) is GRANTED IN PART and DENIED IN PART. To the extent Petitioner asks this Court to assume jurisdiction over this matter and seeks an individualized bond hearing, it is GRANTED. It is DENIED to the extent Petitioner seeks all other relief;
2. That on or before Monday, February 6, 2023, Respondents shall take Petitioner before an impartial immigration judge for a constitutionally adequate, individualized bond hearing in which the government shall bear the burden of proving by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that therefore continued detention is justified;
3. That, pursuant to D.C.COLO.LCivR 7.1(d), which requires that motions be filed as separate documents, and per D.C.COLO.LCivR 54.3, which requires that a motion for attorney fees be supported by an affidavit, Petitioner's request for attorney fees is DENIED WITHOUT PREJUDICE and Petitioner may choose to file a motion for attorney fees that complies with the applicable rules; and
4. The Clerk of Court is directed to CLOSE this case.

DATED this 6th day of January, 2023.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge